42 F.3d 1399
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gurchuran Singh DULAI Plaintiff-Appellant,
v.
IMMIGRATION & NATURALIZATION SERVICE, Defendant-Appellee.
 No. 93-70036.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 14, 1994.*
Decided Dec. 7, 1994.
 
 Before: GOODWIN, D.W. NELSON, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 This case hinges on the validity of a 1981 divorce between petitioner Gurcharan Singh Dulai ("Dulai") and his first wife, Joginder Kaur. Both the Board of Immigration Appeals ("BIA") and the Immigration Judge ("IJ") found that the divorce was invalid. Substantial evidence supports that conclusion, therefore, the ruling below must be affirmed.
 
 I. BACKGROUND
 
 3
 Dulai was born in the Village of Sangatpur, Jalandhar District, India in 1942 and married Joginder Kaur ("Kaur") in 1959. In 1981, after Dulai had illegally entered this country, he learned that his wife, Kaur, was seeking a divorce and sent a power of attorney to his father so that his father could represent him in village divorce proceedings. Dulai claims that the Gram Panchayat ("Village Committee") granted the divorce according to local custom. In February 1983, Dulai married a U.S. citizen named Virginia Laure Neslin. That marriage was annulled on August 11, 1983, apparently because Neslin was already married to someone else. Days later, on August 20, 1983, Dulai married another American woman, Linda Lee ("Lee"). Soon after, Lee requested visas for Dulai and his five children who remained in India. The INS approved the petitions and forwarded the case to the U.S. Consul in New Delhi to process the visas for the five children.
 
 
 4
 While conducting routine interviews of the children, a consular officer in New Delhi became suspicious of the alleged 1981 divorce. In the months the followed, authorities traveled to Dulai's home village of Sangatpur to investigate the 1981 divorce. Apparently in response to this investigation, Dulai's first wife obtained a judicial decree from a Sub-Judge in 1985 confirming their divorce. Application for this declaratory judgment was made through the "Sondhi Travel Agent," an agency known to the Department of State to fabricate documents.
 
 
 5
 Around the same time, petitioner Dulai and his new wife Linda Lee were arrested and charged with participating in a sham marriage ring. Authorities alleged that Dulai had been involved in a scheme to assist others in entering into fraudulent marriages for immigration purposes. Dulai pleaded guilty in June 1986 to a charge of concealing information from a federal agency and possession of false papers to defraud the United States under 18 U.S.C. Sec. 1001 and Sec. 1002.
 
 
 6
 By this time, Department of State investigators had concluded that Dulai's 1981 divorce, and therefore his remarriage and previously issued immigrant visa, were invalid. In INS deportation proceedings, both the IJ and BIA found that Dulai's 1981 divorce was invalid. This BIA decision is the subject of the present appeal.
 
 II. DISCUSSION
 
 7
 The scope of our review of BIA decisions is limited. On petition for review, we must affirm if there is reasonable, substantial, and probative evidence to support the BIA's decision that the INS carried its burden of proving deportability. 8 U.S.C. 1105a(a)(4) (1970); Hernandez-Robledo v. INS, 777 F.2d 536, 539 (9th Cir.1985). We may not reverse simply because the evidence admits of more than one conclusion or because we disagree with the BIA's evaluation of the facts. See INS v. Elias-Zacarias, 112 S.Ct. 812, 815 (1992) (construing Sec. 1105a(a)(4)). Rather, an alien who seeks review of the BIA's determination "must show that the evidence presented was so compelling that no reasonable fact-finder could fail" to rule in his favor. Id. at 817. Dulai's evidence clearly does not meet this stringent standard.
 
 
 8
 Dulai argues that his alleged 1981 divorce was a valid customary dissolution of marriage under the Hindu Marriage Act of 1955 ("Marriage Act").[1] The Marriage Act permits married couples to divorce in accordance with local custom and without judicial intervention. See Marriage Act Sec. 29(2).
 
 
 9
 Under the Marriage Act, the threshold question is whether local custom in Dulai's home village of Sangatpur recognized extrajudicial divorce by mutual consent. Marriage Act at Sec. 3(a) (custom must be "certain and not unreasonable or opposed to public policy" and must have been "observed for a long time"). The INS presented substantial evidence that no such local custom exists.
 
 
 10
 Specifically, the IJ and the BIA relied upon two Library of Congress memoranda in finding that the claimed customary divorce was invalid. The 1986 Library of Congress memorandum prepared by Krishan Nehra, Senior Legal Specialist, American-British Law Division, outlined the requirements that must be met to establish a valid customary divorce under Indian law and concluded that Dulai's Indian divorce did not meet these requirements. In its 1987 memorandum, also prepared by Nehra, the Library of Congress confirmed its 1986 determination that Dulai's customary Indian divorce was invalid, specifically explaining that the 1985 declaratory judgment obtained by Kaur from the Sub-Judge First Class did not substantiate the validity of Dulai's customary divorce.
 
 
 11
 The Library of Congress memoranda were particularized to this case both in law and fact, and specifically addressed whether Dulai complied with the requirements for establishing the validity of a customary divorce under Indian law. The content of the memoranda indicates that Mr. Nehra researched the matter thoroughly before concluding that Dulai's customary divorce was invalid. At a minimum, one can safely say that the Library of Congress memoranda presented enough evidence to permit a reasonable fact-finder to find for the INS.
 
 
 12
 Moreover, in cases such as this one in which American tribunals must apply unfamiliar, foreign law, particularly unwritten, customary law, Library of Congress research deserves considerable evidentiary weight. In the present case, the BIA was entitled to rely on the memoranda for guidance on this difficult question, as it has relied on Library of Congress research in the past. See Matter of Nwangwu, 16 I. & N.Dec. 61, 62 (BIA1976) (relying on Library of Congress memorandum regarding validity of customary divorce); Matter of Akinola, 15 I. & N.Dec. 359, 360 (BIA1975) (same); see also Cheung Tai Poon v. INS, 707 F.2d 258, 259 (6th Cir.1983) (relying on Library of Congress memorandum regarding Hong Kong drug laws).
 
 
 13
 Dulai has presented a substantial body of evidence tending to show that his 1981 divorce was a valid customary divorce, including an affidavit from a local government official, affidavits from his family, and a 1985 declaration by a Sub-Judge First class.[2] Dulai has arguably presented substantial enough evidence to support a BIA finding in his favor. The BIA, however, did not find in Dulai's favor, so Dulai must meet the Elias-Zacharias standard for this court to reverse.
 
 
 14
 Given the strength of the Library of Congress memoranda and the reasoned holdings of both the IJ and BIA, it is absurd to argue that Dulai's evidence was "so compelling that no reasonable factfinder could fail to find" in his favor. INS v. Elias-Zacarias, 112 S.Ct. at 817 (1992). This is particularly true when Dulai's evidence is viewed in the light of his prior conviction for marriage fraud and his gamesmanship with travel agents and available American brides.
 
 
 15
 Because no compelling basis appears in the record for us to substitute our evaluation of the weight and credibility of the evidence for that of the agency chosen by Congress to make those decisions, the judgment is AFFIRMED.
 
 D.W. Nelson, Circuit Judge, dissenting:
 
 16
 The majority appears to have allowed its disapproval of Dulai's current marriage and prior peripheral involvement in a marriage fraud ring to color its assessment of the evidence in this case. As a result, the majority shows extraordinary deference to the BIA and allows a mere simulacrum of evidence to suffice. I respectfully dissent.
 
 I. Analysis
 
 17
 A. Significance of Indian Official's Affidavit
 
 
 18
 The only question in this case is whether Dulai's customary divorce, witnessed and recorded by the Village Committee in the records that the Committee keeps according to statutory mandate, is valid. The Marriage Act specifically acknowledges the validity of extra-judicial customary divorce. Deol, an Indian government Secretary who was responsible for many years for the block of Village Committees including Sangatpur, provided a sworn affidavit that the Village Committee was empowered to grant Dulai's customary divorce. The BIA erroneously refused to credit Deol's affidavit, even though Indian case law gives significant weight to such an official's testimony regarding the existence of customs. See, e.g., Prasad v. Devi, 1972 A.I.R. (Punjab and Haryana) 119, 121 (recognizing a custom of divorce by mutual consent upon key testimony by the Secretary supporting the custom); Madhavrao v. Raghavendrarao, 1946 A.I.R. (Bombay) 377, 380 (stating that the "general opinion of members of the community or elders, who are likely to know the existence of the custom, is entitled to great weight even though they may not be able to give specific instances").
 
 B. Unreliability of U.S. Embassy Report
 
 19
 The majority relies on an untrustworthy U.S. Embassy investigative report to suggest that Dulai indulged in "gamesmanship" by having a travel agency fabricate documents connected with the 1985 declaratory judgment. The Embassy report is unreliable for several reasons. The investigator did not interview Dulai's former wife, the Sub-Judge, or members of the Village Committee. There is no indication that the investigator examined the Village Committee's records. In addition, affidavits by Dulai's son and mother directly contradict the report's assertion that they were unaware of Dulai's remarriage. Also, the investigator was apparently from a different religious background, which may have engendered suspicion among those few individuals that he did interview. Lastly, the report provided no substantiation for its "comment" that the agency through which Dulai's wife filed the 1985 suit was "well known by the Embassy for creating documents based on fraudulent and false evidence and witnesses."
 
 
 20
 C. Importance of District and Session Judge's Authentication
 
 
 21
 In concluding that the declaratory judgment was "not a valid document," the BIA gave "great weight" to the Library of Congress assertion of collusion and lack of jurisdiction. However, the District and Session Judge's authentication of the earlier decision, which the majority discounts as nothing more than an authenticated copy of something already in the record, strongly supports the conclusion that the Sub-Judge decree was not a product of travel agency fabrication or collusion, but instead an appropriate exercise of legitimate judicial authority. The fact that this authentication was requested by the government, received by the government prior to the BIA's decision, and not brought to the BIA's attention because it was misrouted by the government is also highly relevant, because the lack of authentication was in the record before the BIA.
 
 D. Irrelevance of Character Evidence
 
 22
 Similarly, the majority apparently allowed its own disapproval of Dulai's character to taint its evaluation of the evidence. The authenticity of Dulai's marriage to Linda Lee was not an issue, because the IJ stated, "I have no evidence before me to indicate that the respondent falsely claimed to be a spouse of a citizen of the United States or that his visa was procured by fraud or by willful misrepresentation of a material fact." Yet, the majority suggests unmistakably that it considers the marriage a sham and that its determination of bad character is relevant to its assessment of the evidence before the BIA.
 
 
 23
 E. Inadequacy of Library of Congress Memoranda
 
 
 24
 Perhaps most problematic, the majority would allow the BIA to elevate conclusory Library of Congress memoranda to the status of probative evidence simply because the BIA in the past has relied on the Library of Congress for international legal research. The 1986 Library of Congress memorandum, however, provides almost no support for the BIA's decision. It suggests negative implications of Dulai's annulled marriage. It gives credence to the unreliable Embassy report. It speculates about Dulai's former wife's reasons for seeking the 1985 declaratory judgment. It then purports to reach a legal conclusion that Dulai's divorce was a sham by reasoning from unsupported conclusory assertions that Village Committees are not empowered to grant customary divorces and that the parties have not shown that they had a right to customary divorce. In fact, the statute codifying the Village Committee structure specifically provides broad governance responsibilities for maintaining records and making general orders in the administration of village life, in addition to granting to the Committees jurisdiction over minor civil and criminal court matters. See Punjab Gram Panchayat Act of 1952, Chap. II-V. Deol's affidavit supports the existence of a custom of divorce witnessed by Village Committees. The fact that the Marriage Act "saves harmless" existing methods of customary divorce provides additional support for Village Committee authority in this area. See Marriage Act Sec. 29(2).
 
 
 25
 The 1987 memorandum is no better. First, most of the legal analysis and four of the five conclusions discuss the validity of the Sub-Judge's declaratory judgment as a retroactive divorce decree, apparently because the author assumes that the judgment is meaningless if not valid as a divorce decree under the Marriage and Family Court Acts. The memorandum asserts, without support, that the declaratory judgment action was "collusive," and thus concludes that the proceeding was invalid because it did not "ensure compliance with" Section 23 of the Marriage Act, even though that section deals with requirements for judicial grants of divorce based on adultery or mutual consent rather than with recognition of extra-judicial customary divorces. The memorandum also concludes that a Sub-Judge has no jurisdiction in divorce matters, even though one of the very cases cited in the memorandum for other purposes makes clear that a Sub-Judge Court does have jurisdiction over judicial divorce actions through delegation of the District Court's powers under section 3(b) of the Marriage Act. See Devi v. Ram, 1958 A.I.R. (Himachal Pradesh) 15, 16 (noting that a Sub-Judge had authority under the Act to grant judicial divorces in accord with the statutory requirements). The memorandum accurately notes that the September 1984 Family Courts Act removed divorce jurisdiction from the District Courts (and courts deemed to be District Courts under the Marriage Act) and placed that jurisdiction in newly created Family Courts in areas where the new courts were established--cities of more than one million in population and other areas to be designated by the state government in consultation with the High Court--with varying effective dates, also to be decided after consultation. However, there is no record that a Family Court had been established in Jalandhar, a primarily agricultural district, before the December 5, 1985 decision, or that one has ever been established for that district. In spite of this conflicting evidence, the Library of Congress memorandum deals with this entire body of ambiguous jurisdictional law in a conclusory manner, stating simply that only Family Courts can issue a divorce decree. The memorandum concludes that a court cannot grant a divorce on grounds of mutual consent based on a mere allegation of custom by the parties involved, but it does not establish that a declaratory judgment recognizing the validity of a customary divorce that is recorded in village records and supported by appropriate testimony is an improper act beyond the jurisdiction of the Sub-Judge Court. Here, the District and Sessions Judge's authentication of the declaratory judgment is highly significant.
 
 
 26
 Second, the memorandum relies on two cases in which the Indian courts refused to recognize customary divorces when the parties had merely alleged the existence of the custom. These cases are easily distinguished because here the Village Committee recorded Dulai's customary divorce in its official records and the Indian official with responsibility over the Village Committee has attested that the custom existed. As noted earlier, Indian courts give great weight to such official testimony regarding the existence of customs. Similarly, the Indian courts have recognized the significance of village records as support for the existence of customs in other areas. See Ramji Lal v. Tej Ram, 73 Punjab Record 345, 350, 353 (1895) (considering the village records especially relevant to an issue of alienability customs).
 
 
 27
 Third, the memorandum shows a careless disregard for the words of the statute it purports to interpret. It states, again without providing any authoritative support, that the Marriage Act "adopts" all judicially imposed requirements for proof of custom. The statute, however, provides an explicit definition of custom for the purposes of the Act, which does not include the rule that customs must be "construed strictly," as the memorandum implies. See Marriage Act Sec. 3(a).
 
 
 28
 Fourth, the memorandum asserts that customs must be proven by specific instances, but the excerpts of the Evidence Act of 1872 in the record indicate only that "any transaction" or "particular instances" in which a right or custom was previously asserted is "relevant" to establish a custom, not "required." Id. at Sec. 13. The memorandum supports its assertions about the rigid requirements for proof of customs in part by citing a case applying the special body of law regarding customary restraints on agricultural land alienability and rights of succession. See Pratap v. Prasad, 1956 A.I.R. (Patna) 457. In a misleading quotation from Pratap that figures prominently in the BIA decision, the memorandum suggests that proof of specific instances is the only way to establish a custom; yet, the Pratap court indicated later in the opinion that custom could be established either by a family tradition that the custom existed or by specific instances. Pratap, 1956 A.I.R. (Patna) at 475. Similarly, a second case, cited by the memorandum to support the asserted requirement of specific instances, actually concludes to the contrary that "Courts should not treat the proof of specific instances as the only method in which the custom could be established. If there is general evidence as to the existence of the custom given by members of the family or the community, it would be open to the Courts to rely upon that evidence and to hold the particular custom as proved." Madhavrao v. Raghavendrarao, 1946 A.I.R. (Bombay) 377, 387 (emphasis added).[1]
 
 
 29
 Fifth, the memorandum states that Indian court cases upholding customary divorces among Sikhs in other regions are inapplicable to Dulai's case. That conclusion is incorrect: although the existence of a custom elsewhere does not in itself establish a custom, because there is no universal presumption that particular customs apply to the same ethnic group in all locations, Indian cases still consider that type of evidence relevant. See Ramji Lal v. Tej Ram 73 Punjab Record 345, 349, 352-54 (1895) (to rebut the initial presumption of applicability to a particular village of a general custom of inalienability of land, the court found relevant, though not dispositive, the evidence from other villages that might support a special custom in those villages different from the general custom among Dogar Jats).
 
 
 30
 Finally, and perhaps most troubling, the memorandum gives significant weight to an early compendium of Indian customs, the Riwaj-i-am, despite the fact that the Indian Supreme Court has explicitly found it unreliable on the issue of divorce customs in Jalandhar. See Singh v. Kaur, 71 Punjab L.R. 12 (India S.C.1967), aff'g Kaur v. Singh, 64 Punjab L.R. 1179 (Punjab H.C.1962).
 
 
 31
 F. Necessity of Addressing Dulai's Equitable Estoppel Claim
 
 
 32
 The majority does not mention that the INS acknowledged, in writing, that Dulai had been a long-time resident of this country who believed that he was legally divorced before he married his current wife. Consequently, the INS promised not to seek deportation of Dulai because of the allegedly defective divorce, in return for Dulai's cooperation in prosecution of the marriage fraud ring. When the remaining defendants pled guilty shortly after the INS' initial interview with Dulai, the INS decided not to abide by its promise because it determined unilaterally that Dulai had not been completely truthful. The majority should not have affirmed the BIA's decision without considering Dulai's equitable estoppel claim.
 
 II. Conclusion
 
 33
 The majority discounts compelling evidence that customary divorce exists in Sangatpur: at least one type of customary divorce has been recognized by the Indian courts for Jalandhar, a valid village record exists of Dulai's divorce, an authenticated Sub-Judge declaratory judgment confirms the divorce, and an Indian official with express authority over Village Committees, whose testimony would be given significant weight by Indian courts, has attested to the validity of Dulai's customary divorce. On the basis of the evidence provided by the Library of Congress memoranda, the majority affirms the BIA's decision and strikes at the very heart of the rules of comity in international law to pluck a man from the country where he has lived for almost twenty years. As Justice Frankfurter once said in another administrative review context,
 
 
 34
 Congress has imposed on [the courts] responsibility for assuring that the Board keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals. The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both.
 
 
 35
 Universal Camera Corp. v. NLRB, 340 U.S. 474, 490 (1951).
 
 
 36
 Because I believe the Library of Congress memoranda do not constitute substantial evidence, I would reverse the BIA's decision.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Marriage Act applies to people who are of the Hindu, Buddhist, Jaina, and Sikh religions. Marriage Act at Sec. 2(1)
 
 
 [2]
 On appeal, the INS submitted a 1988 memorandum from the District and Sessions Judge of Jalandhar certifying and authenticating the 1985 decree that the 1981 divorce was valid. See, Respondent's Supplemental Addendum to the Brief for Respondent. Absent a motion to reopen the BIA decision, however, this court cannot receive new evidence on appeal. This evidence was not before the BIA and so is not part of the record properly before this court on review. Furthermore, the District and Session Judge's certificate adds nothing to this case. The "new" evidence is nothing more than an authenticated copy of the 1985 decree which was already in the record before the BIA
 
 
 [1]
 It should also be noted that the memorandum provides inaccurate page or province citation information for at least three of the total of nine cases cited, including the two discussed in this paragraph